CO-PROB12C
(Revised 5/14-D/CO)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

U.S.A. VS. JUAN CARLOS CRUZ MANCHA                    DKT. NO. 1:20CR00131-1

## PETITION FOR SUMMONS ON PERSON UNDER SUPERVISION

COMES NOW, Damillah Williams, United States Probation Officer, presenting an official report upon the conduct and attitude of defendant Juan Carlos Cruz Mancha, who was placed on supervision by the Honorable Dale A. Kimball, sitting in the United States District Court in Salt Lake City, Utah, on March 1, 2018.  The defendant was sentenced to 24 months imprisonment and three years' supervised release for the offense of Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and (b).  Supervision commenced on March 9, 2020, and is set to expire on March 8, 2023.  Jurisdiction of the case was transferred from the District of Utah to the District of Colorado on May 8, 2020.  As noted in the judgment [Document 1-1], the Court ordered mandatory, special, and standard conditions of supervision.  The probation officer alleges the defendant has violated the following terms and conditions of supervised release as set forth herein.

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF THE COURT DUE TO CAUSE AS FOLLOWS:**

**VIOLATION(S) ALLEGED:**

**1. VIOLATION OF LAW**

On or about October 25, 2020, the defendant committed Assault 3 – Know Cause Serious Bodily Injury – Domestic Violence, in violation of C.R.S. § 18-3-204(1)(a).  This is a Class 1 Misdemeanor, which constitutes a Grade B Violation of supervised release.

On October 25, 2020, the defendant was arrested by Denver Police officer's and charged in Denver County Court, Case Number 20M06492, with Third Degree Assault – Know/Reckless Cause Injury (misdemeanor), in violation of 18-3-204(1)(a) and Criminal Mischief - $750-$1000 (misdemeanor), in violation of 18-4-501(1), (4)(c).

According to the arrest narrative provided by the Denver Police Department, on October 25, 2020, at approximately 12:58 a.m., officers responded to an address amid an assault in progress.  While responding to the location, dispatch advised numerous calls were received regarding a person screaming in an apartment and a physical disturbance between a male and female.

Upon arrival, officers were guided by neighbors to the apartment.  The suspect, later identified as the defendant, returned from an open space north of the apartment, and was placed in custody without incident.  Once in custody, the defendant became

Case No. 1:20-cr-00131-RM   Document 5   filed 03/16/22   USDC Colorado   pg 2 of 6

Juan Carlos Cruz Mancha  
1:20CR00131-1

Petition for Summons on Person Under Supervision  
Page 2

March 16, 2022

combative with officers and had to be restrained on the ground.  Due to the defendant's level of intoxication and possibly being under the influence of an unknown narcotic, the defendant was sedated and transported to the hospital.

The victim was identified as the defendant's girlfriend, Ashley Gronquist.  She reported they have been together three years and were at a party earlier that evening, consuming alcohol.  She reported they got into an argument regarding her infidelity a week earlier.  The defendant began to destroy the inside of her apartment in an estimated amount of $5,000 in damages.  She reported she was not struck by the defendant and refused medical attention.  Officers observed items had been thrown around the apartment and broken.  The front door was also broken.  Neighbors reported witnessing the defendant holding Gronquist in a "head lock" and choking her.

On January 22, 2021, the defendant was sentenced to 12-month deferred judgment, to be supervised by the probation department, after pleading guilty to Third-Degree Assault – Know/Reckless Cause Injury (misdemeanor), in violation of 18-3-204(1)(a).  The charge of Criminal Mischief - $750-$1000 was dismissed.  The deferred judgment terminated on January 21, 2022, and the charge of Third Degree Assault – Know/Reckless Cause Injury (misdemeanor) was dismissed.

## 2.  EXCESSIVE USE OF ALCOHOL

On or about February 17, 2022, the defendant used alcohol to excess, which constitutes a Grade C violation of supervised release.

On February 17, 2022, at approximately 1638 hours, Arvada Police officers were dispatched to the 24-Hour Fitness, located at 12680 W 64th Avenue in Arvada, Colorado, in reference to a welfare check.  According to the reporting party, they observed a white Volvo SUV bearing Colorado License Plate, ALT Z16, with a driver slumped over in the driver's seat.  The driver was later observed getting out of the vehicle and was falling over.  The driver then reentered the vehicle and left the parking lot leaving site of the reporting party.

The vehicle was later located by officers behind a Chipotle restaurant, located at 12550 West 64th Avenue in Arvada, Colorado, with a male, later identified as the defendant, who was pushing the vehicle.  As officer's approached the defendant, he appeared unsteady on his feet with a pair of scissors in his hand, which was believed to be a knife with an orange handle in a tan leather sheath, along with other several edged weapons on his person.  As officer's spoke with the defendant, they could smell the distinct scent of an unknown alcoholic beverage emanating from his breath.  The defendant initially told officers he was there waiting for his father to arrive.  When asked if he consumed any alcoholic beverage that day he responded with a slow and slurred reply of "nothing" and "I can't do that stuff."  When asked where he was coming from, the defendant told officers he was leaving from the Burger King, which was across the parking lot.  It should be noted, there were no Burger King products in plain view of the vehicle.

Case No. 1:20-cr-00131-RM   Document 5   filed 03/16/22   USDC Colorado   pg 3 of 6

| | | |
|---|---|---|
| Juan Carlos Cruz Mancha<br>1:20CR00131-1 | Petition for Summons on Person Under Supervision<br>Page 3 | March 16, 2022 |

When officers asked the defendant to provide his identifying information, he became agitated, would not provide it, and then declined to speak with officers in fear that they were going to shoot him.

Officer's spoke with the reporting party again to gain more clarifying information on his observations and/or interactions with the defendant. He clarified customers were coming in the 24-Hour Fitness reporting of there being a male passed out in a white vehicle on the north side of their business. He advised when he went out to the vehicle, he observed the defendant passed out in the driver's seat of the white vehicle, which was running. He advised trying to contact the defendant by knocking on the driver side window. Eventually, the defendant woke up, exited the vehicle, and began trying to push the vehicle eastbound through the parking lot. The reporting party confirmed seeing the defendant ultimately getting in the vehicle and drive away. Due to the reporting party's witness statement as well as the behavior observed by officers while on scene, probable cause existed to place the defendant into custody for suspicion of Driving Under the Influence.

When the defendant was being escorted to the patrol vehicle, he began to resist by going limp and not walking with officers. At this point, officers had to carry the defendant to their patrol vehicle. While officers were trying to get the defendant's legs into the vehicle, he looked to one of them and spit toward him. The spit landed on the officer's police radio microphone and slightly below on his chest. Officers attempted to place a spit hood on the defendant but were unsuccessful. He then began actively crying, speaking nonsensically, and refused to answer questions.

During the entirety of the drive to the Jefferson County Detention Center, the defendant would not stop yelling and screaming in the back seat of the vehicle along with spitting all over the other rear seat. Due to his combative nature upon arrival at the detention facility, deputies had to respond to the parking lot of the booking area to help remove him from the patrol vehicle. The spit hood was successfully secured on the defendant, he was escorted directly to a secure holding cell within the booking area. After approximately five minutes of being in the secured holding cell, the defendant would not stop yelling and screaming. Deputies elected to intervene by physically restraining the defendant in a specialized restraint cart. This process took approximately six deputies to physically place the defendant in the cart before he was secured and moved to the intake portion of the jail.

Based on the aforementioned, the defendant was charged with Assault in the Second Degree (Felony) in violation of C.R.S. 18-3-203 (1)(h)(2)(b), Driving Under the Influence (Misdemeanor) in violation of C.R.S. 42-4-1301(1)(a), and Obstructing a Peace Officer (Misdemeanor)in violation of C.R.S. 18-8-104(1)(a)(4).

On February 19, 2022, the defendant was released from custody on $5000 surety bond with Pre-trial Supervision to include no alcohol or drug use and SCRAM monitoring. He is scheduled for a Disposition Hearing on March 17, 2022, at 9:00 a.m. in Jefferson County District Court, Division 350, case number 2022CR662.

Case No. 1:20-cr-00131-RM   Document 5   filed 03/16/22   USDC Colorado   pg 4 of 6

| | | |
|---|---|---|
| Juan Carlos Cruz Mancha<br>1:20CR00131-1 | Petition for Summons on Person Under Supervision<br>Page 4 | March 16, 2022 |

In response to the new case filing, the Probation Officer has been working with the defendant to resume Medication Assisted Treatment (MAT) services which he is now prescribed Antabuse.  Additionally, the defendant is in individual substance abuse individual therapy with PFA Counseling.  The Probation Officer is attempting to collaborate with his therapist to ensure the defendant is receiving the appropriate level of care and therapeutic intervention to appropriately address his needs.  Lastly, the Probation Officer is collaborating with Jefferson County Pretrial Services to monitor his sobriety through urine analysis testing and accountability measures and have increased supervision contacts with the defendant.

### 3.  POSSESSION AND USE OF A CONTROLLED SUBSTANCE

On or about December 15, 2020, the defendant used or administered a controlled substance, Cannabinoids, which had not been prescribed for Select One by a physician.  This constitutes a Grade B[1] violation of supervised release.

On December 15, 2020, the defendant submitted a drug screen at Independence House North, the contract testing and treatment provider of the Probation Office, which returned presumptive positive for Cannabinoids.  On December 28, 2020, the Probation Officer called the defendant who acknowledged using marijuana.  In response, the Probation Officer collaborated with the defendant's therapist and his treatment plan was modified to intensive outpatient therapy.

### 4.  FAILURE TO PARTICIPATE IN SUBSTANCE ABUSE TESTING AS DIRECTED BY THE PROBATION OFFICER

The defendant failed to provide urine samples at Independence House North, the testing and treatment program in which the probation officer directed him to participate, on December 20, 2020, and January 23, 2021.  This constitutes a Grade C violation of supervised release.

On December 14, 2020, pursuant to the defendant's conditions of supervised release, he was referred to Independence House North for drug testing services and directed to comply with the rules and regulations of the program.

The defendant failed to submit drugs screens as directed with Independence House North on December 20, 2020 and January 23, 2021.   In each instance, the Probation

---

[1] The Probation Office believes that the defendant's possession and use of cannabinoids is a Grade B violation.  According to §7B1.1(a)(2), a Grade B Violation is based on conduct constituting any other offense punishable by imprisonment of more than a year.  In U.S. v Rockwell, 984 F.2d 1112 (10th Cir.) cert. denied, 113 S. Ct. 2945 (1993), the Court equated drug use with drug possession.  In U.S. v Robles, 447 Fed. Appx. 892 (10th Cir. 2012), the Court found that drug use equates to drug possession and is a Grade B violation under USSG §7B1.1.   In U.S. v Rodriguez, Appellate Case No. 18-1449 (10th Cir. December 2019), the Court re-affirmed that drug use equates to drug possession and for a defendant with prior qualifying drug convictions under 21 U.S.C. § 844(a), the potential penalty is more than one-year imprisonment and is appropriately considered a Grade B violation.

Case No. 1:20-cr-00131-RM   Document 5   filed 03/16/22   USDC Colorado   pg 5 of 6

| | | |
|---|---|---|
| Juan Carlos Cruz Mancha<br>1:20CR00131-1 | Petition for Summons on Person Under Supervision<br>Page 5 | March 16, 2022 |

Office received email correspondence form Independence House North, indicating the defendant had failed to submit to random testing on the aforementioned dates.

In response to the missed urine tests, the Probation verbally admonished the defendant as a corrective strategy.

## STATEMENT IN SUPPORT OF ACTION/JUSTIFICATION

Based on the nature of the defendant's alleged violations, the probation officer requests a summons.

## RESPECTFULLY REQUESTING THAT THE COURT WILL ORDER:

The issuance of a summons ordering the defendant to appear in court for a violation hearing, and that the Court consider revocation of supervision.

I DECLARE under penalty of perjury that the foregoing is true and correct.

*s/ Damillah Williams*
  Damillah Williams
  United States Probation Officer
  Place:   Denver
  Date:    March 16, 2022

*s/ Garret C. Pfalmer*
  Garret C. Pfalmer
  Supervising United States Probation Officer
  Place:   Denver
  Date:    March 16, 2022

**PRELIMINARY ADVISORY REVOCATION GUIDELINE CALCULATION:**

The defendant was originally convicted of a Class C felony, thus the maximum sentence allowed upon revocation is not more than two years imprisonment, pursuant to 18 U.S.C. § 3583(e).  Based upon Chapter 7 of the U.S. Sentencing Guidelines, the most serious conduct alleged as a violation of supervision is considered a Grade B violation. The defendant's criminal history is a Category I, thus the advisory guideline range for revocation is four to 10 months.

**STATEMENT IN SUPPORT OF RELEASE AT INITIAL APPEARANCE:**

The defendant is not viewed as presenting a risk of flight. While the defendant has continued to struggle with sobriety, he has maintained contact with the supervising probation officer. The defendant has a lengthy history of abusing alcohol and has struggled with maintaining his sobriety throughout his time on supervised release. While under supervision with Denver Probation, he was on monitored sobriety and enrolled in Medication Assisted Treatment (MAT) services where he was prescribed Vivitrol to assist with his alcohol dependance. In June 2021, the defendant submitted a positive urine test for Denver Probation which returned positive for alcohol consumption while he was on Vivitrol. Additionally, he submitted diluted urine tests for Denver Probation on August 24, 2021, and September 14, 2021. On October 5, 2021, the defendant discontinued his participation in MAT services and received his last Vivitrol injection on this date. He successfully terminated from his deferred judgment and sentence on January 22, 2022, and within less than a month picked up another offense where he was heavily intoxicated and acted in a manner that was extremely belligerent.

Since the filing of the new criminal matter in Jefferson County District Court, the defendant voluntarily placed himself back in MAT services and is now prescribed Antabuse. He is being monitored by Jefferson County Pretrial Services through their SCRAM monitoring program, which serves as an extra layer to monitor the defendant's alcohol use. The defendant reports engaging in individual substance abuse specific therapy with PFA Counseling, where he received his domestic violence treatment while he was on supervision in Denver County. As previously indicated, despite these issues, the defendant has maintained contact with the supervising probation officer and his whereabouts are currently known.

In addition, she does not present a risk of non-appearance. Pursuant to F.R.Crim.P.Rule 32.1(a)(6), the burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the defendant.